**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

MICHAEL GRECCO PRODUCTIONS, INC.,

                    Plaintiff,

v.                                           Case No. 3:16-cv-1335-J-34PDB

RGB VENTURES, LLC,

                    Defendant.

_____/

# O R D E R

**THIS CAUSE** is before the Court on Defendant's [sic] RGB Ventures, LLC's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 13; Motion), filed on January 10, 2017. On January 24, 2017, Plaintiff Michael Grecco Productions, Inc. filed its Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss (Doc. No. 18; Response). Accordingly, this matter is ripe for review.

## I.    Background

### A.    Factual Allegations[1]

Plaintiff Michael Grecco Productions, Inc. (Grecco) brings this copyright infringement and breach of contract action against Defendant RGB Ventures, LLC (RGB). See Plaintiff's First Amended Complaint and Jury Demand (Doc. No. 7; Complaint). According to the Complaint, Grecco is owned by Michael Grecco, a commercial photographer and film director known for his celebrity portraits, magazine

---

[1] In considering the Motion, the Court must accept all factual allegations in the complaint as true, consider the allegations in the light most favorable to the plaintiff, and accept all reasonable inferences that can be drawn from such allegations. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). As such, the facts recited here are drawn from the complaint, and may well differ from those that ultimately can be proved.

covers, editorial images, and advertising spreads.  Id. ¶ 8.  Grecco is the "exclusive owner of all rights, title, and interests" to certain images, for which Grecco obtained registrations from the United States Copyright Office, including specific images identified in the Complaint (the Infringed Images).  Complaint ¶¶ 16-18.[2]  RGB owns and operates a number of websites where it "reproduces, displays, distributes[,] and sublicenses rights to media images[,]" copyrighted and owned by others.  Id. ¶ 9.  On or about July 2, 2012, Grecco and RGB entered into an "Exclusive Contributor Agreement" and a "Non-Exclusive Contributor Agreement" (together, the Agreements), whereby Grecco granted limited licenses in over 1,700 of its copyrighted images, including the Infringed Images, to RGB for the purpose of sub-licensing and distributing the images either directly or through specifically identified agents referred to as "Third Party Distributors" (TPDs).  See id. ¶¶ 10-12; see also Complaint, Exhibit A: Exclusive Contributor Agreement and Non-Exclusive Contributor Agreement (Doc. No. 7-1; Agreements).

Pursuant to the Agreements, RGB was obligated to "track and remit royalty payments" to Grecco based on "revenue earned from fees paid for sublicenses [in its copyrighted images] by end user customers."  Id. ¶ 10.  Grecco alleges that the TPDs acted as RGB's agents in "promoting, marketing, distributing[,] and granting sublicenses" to use Grecco's copyrighted images.  Id. ¶ 13.  The Agreements contain a number of provisions[3] which are relevant to the resolution of the pending Motion:

---

[2]     In the Complaint, Grecco provides copyright registration numbers for the Infringed Images, see Complaint ¶ 17, and in an exhibit attached thereto, Grecco provides additional registration information from the United States Copyright Office's Copyright Catalog, see Complaint, Exhibit C: Copyright Catalog Extracts (Doc. No. 7-4).

[3]     Although there are some minor differences between the "Exclusive Contributor Agreement" and "Non-Exclusive Contributor Agreement," the language of the following provisions is the same in both Agreements, and any other differences are immaterial to the resolution of the present Motion.

- <u>Section I-M</u>: **"Third Party Distributor"** means any affiliate, partner, distributor or marketing entity with which [RGB] enters into a marketing and sublicense agreements [sic] for the promotion, distribution and licensing of Content.

- <u>Section II-G</u>: **Credit.** [RGB] shall advise its licensees and Third Party Distributors to include a credit notice as designated by [Grecco] where appropriate and practical along with the Content. As mutually agreed upon between [Grecco] and [RGB], [RGB] may choose to brand [Grecco's] Content under a "house" brand on a case by case basis. Such notice may include [RGB's] name or Third Party Distributor[s'] name as the source of the Content . . .

- <u>Section III-C</u>: **Distribution and Licensing Terms.** [RGB] shall have complete and sole discretion regarding the terms, conditions and pricing of the Content licensed or sublicensed to third parties. [RGB] shall have complete and sole discretion as to delivery methods and distribution of the Content. [Grecco] acknowledges that [RGB] may rate, comment upon, and evaluate Content, add or amend keywords, tags, titles, descriptions and metadata to Content, and digitally watermark the Content in both a visible and invisible manner.

- <u>Section III-D</u>: **No Responsibility for Misuse of Content.** [Grecco] acknowledges that the Content provided pursuant to this Agreement may be licensed by third parties in accordance with the terms of an End User License Agreement (EULA). [RBG] cannot take responsibility for the compliance by licensees of the terms of such agreements, and [Grecco] acknowledges and agrees to the possibility of Content being used in a manner that is not contemplated in this Agreement or the EULA . . .

- <u>Section V-C</u>: **Survival Term.** Upon expiration or termination of this Agreement, [RGB] may continue to exercise the licensing rights granted herein for . . . (18) months . . .

- <u>Section V-D</u>: **Survival.** Sections I, III, IV, VII, IX, X, and XI . . . will survive the termination or expiration of this Agreement and continue in full force and effect, but all other rights and obligations of the Parties shall cease immediately.

- <u>Section XI-B</u>: **Independent Contractor**. Nothing in this Agreement creates a partnership, agency relationship, employer-employee relationship, or a joint venture between the Parties.

See Agreements. In the Complaint, Grecco emphasizes that, although the Agreements permitted RGB to utilize the TPDs to secure sublicenses, RGB nevertheless maintained control of the terms of these sublicenses, regardless of whether a sublicense was granted by RGB directly or indirectly by the TPDs. See Complaint ¶¶ 14-15 (citing Agreements, Section III-C). Grecco and RGB terminated the Agreements on or about December 2, 2013. Id. ¶ 19.

During the term of the Agreements, the eighteen month survival period (the Survival Term), and subsequently, Grecco alleges RGB failed to pay Grecco in accordance with the terms of the Agreements. See id. ¶ 21. Specifically, Grecco cites to three instances where it was not compensated for the use of its copyrighted images: (1) in 2014, Grecco discovered its copyrighted image of musician Johnny Cash on an album cover, and the image was credited to one of RGB's authorized TPDs, but RGB had neither informed Grecco of the sublicense nor made any royalty payments resulting from it; (2) in 2016, Grecco discovered its copyrighted image of the band New Order in a magazine and later learned that the image had been sublicensed by an authorized TPD, but RGB again failed to inform Grecco of the sublicense or pay the required licensing fee; and (3) in 2016, Grecco discovered its copyrighted image of singer Michael Jackson in a book, and the book's publisher credited the image to an authorized TPD, but RGB failed to disclose this sublicense or pay Grecco the required licensing fee. See id. ¶¶ 22, 26-27. Grecco further alleges that, with the exception of one late payment for use of the Johnny Cash image, it "has not received any license fee for sublicenses of [the copyrighted images] by [RGB] or any [TPD]." Id. ¶ 25.

Additionally, during both the term of the Agreements as well as the Survival Term, RGB allegedly distributed the copyrighted images to and through ImageSelect BV (ImageSelect), an unauthorized third party distributor. See id. ¶ 31. Section III-A of the "Non-Exclusive Contributor Agreement" states in relevant part that "[i]n addition to [RGB's] non-exclusive direct licensing rights, [Grecco] grants [RGB] the non-exclusive right to sub-distribute [Grecco's] Content to the [TPDs] listed in Annex A." See Agreements. However, ImageSelect is not one of the authorized TPDs included in Annex A. See id. Later, following the expiration of the Survival Term, both RGB and ImageSelect allegedly infringed Grecco's copyrights in the copyrighted images by continuing to "reproduce[e], distribut[e], and publicly display[]" the copyrighted images on the internet. See Complaint ¶ 32. For example, in 2016, Grecco discovered that its copyrighted images of actor James Caan had been licensed by ImageSelect to an end user. Id. ¶ 33. Upon reviewing ImageSelect's website, Grecco determined that a number of its copyrighted images were still being reproduced, displayed, and held out for licensing on that website. Id. Notably, ImageSelect's website credited Grecco's copyrighted images to RGB. Id.

Similarly, after the expiration of the Survival Term, Grecco determined that RGB – "by and through the [TPDs]" – was continuing to reproduce, display, and hold out for licensing a number of its copyrighted images. See id. ¶ 34. According to the Complaint, Grecco's copyrighted images were displayed on the following authorized TPD websites: AAI Fotostock, AGB Photo, AGE FotoStock, Alamy, AllPhoto Images, All Posters/Art.com, Bew Photo, Daiichi Colour, Datacraft Co., Dinodia, Diomedia, Glow Images, Hill Creek Pictures, Mauritius Images, Maxx Images, and Top Photo Group. Id. Science Faction, another third party that Grecco alleges unlawfully reproduced, displayed, and held out for

license its copyrighted images, was purportedly acquired by RGB as a wholly-owned subsidiary in or around 2012. Id. ¶ 35. To conceal both its own infringement and that of the TPDs, Grecco alleges RGB "provided the false copyright management information 'Superstock' or 'Superstock RM' when reproducing, displaying, and holding out for license" the Infringed Images. Id. ¶ 37.

**B.    Procedural History**

Grecco filed the operative Complaint in this action on November 23, 2016. In the Complaint, Grecco brings five claims against RGB: (1) a claim for direct copyright infringement (Count I); (2) a claim for contributory copyright infringement (Count II); (3) a claim for vicarious copyright infringement (Count III); (4) a claim for violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq. (DMCA) (Count IV); and (5) a claim for breach of contract under Florida common law (Count V). See generally Complaint ¶¶ 42-85. On January 10, 2017, RGB filed the instant Motion. See generally Motion. In the Motion, RGB seeks dismissal of all claims pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), for failure to state a claim. See id. With respect to Count II, RGB alternatively seeks a more definite statement of the claim pursuant to Rule 12(e).[4] Id. at 3, 8.

**II.    Standard of Review**

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009);

---

[4]    Although the Motion cites the legal standard for seeking a more definite statement, see Motion at 3, it otherwise fails to "point out the defects complained of and the details desired" regarding Count II of the Complaint. See Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll., 77 F.3d 364, 366 n. 3 (11th Cir. 1996) (quoting Rule 12(e)). As such, to the extent the Motion seeks a more definite statement with respect to Grecco's claim for contributory copyright infringement, this request for relief is due to be denied.

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).  In addition, all reasonable inferences should be drawn in favor of the plaintiff.  See Omar ex. rel. Cannon v. Lindsey, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam).   Nonetheless, the plaintiff must still meet some minimal pleading requirements.  Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted).  Indeed, while "[s]pecific facts are not necessary," the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  The "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted).  Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," which simply "are not entitled to [an] assumption of truth."  See Iqbal, 556 U.S. at 678, 680.  Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570).

### III. Analysis

#### A. RGB's Interpretation of the Agreements

As an initial matter, RGB contends that "the majority of [Grecco's] allegations are in conflict with the Agreements," and as such the contract provisions negate the claims asserted by Grecco in the Complaint. See Motion at 4. "However, the Court 'may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.'" Geter v. Galardi S. Enters., Inc., 43 F. Supp. 3d 1322, 1328 (S.D. Fla. 2014) (quoting McKissack v. Swire Pac. Holdings, Inc., No. 09-22086-CIV, 2011 WL 1233370, at *3 (S.D. Fla. Mar. 31, 2011) (citation omitted)). Accordingly, the Court will address RGB's preliminary arguments only to determine whether the language of the Agreements attached as exhibits to the Complaint contradicts any general and conclusory allegations in the Complaint, as in these instances, "the exhibits govern." See Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007).

First, with respect to Grecco's agency allegations, RGB argues that, pursuant to Section XI-B of the Agreements, "the parties agreed that nothing in the Agreements creates an agency relationship." Motion at 4-5. However, the full text of that provision states that nothing in the Agreements creates an agency relationship "between the Parties[,]" which are identified in the opening paragraphs of the Agreements as Grecco and RGB. See Agreements, Section XI-B (emphasis added). The same cannot be said with respect to the relationships between RGB and the TPDs, or any other alleged unauthorized third party distributor. Under Florida law, the creation of an actual principal-agent relationship

requires: "(1) the principal's acknowledgement that the agent will act for it; (2) the agent's acceptance of the undertaking; and (3) the principal's control of the agent's actions." Durham Commercial Capital Corp. v. Select Portfolio Servicing, Inc., No. 3:14-CV-877-J-34PDB, 2016 WL 6071633, at *20 (M.D. Fla. Oct. 17, 2016)[5] (citing Whetstone Candy Co. v. Kraft Foods, Inc., 351 F.3d 1067, 1077 (11th Cir. 2003)). Here, Grecco alleges that the Agreements authorized RGB to perform its licensing obligations using the TPDs, see Complaint ¶ 11, and that RGB had "complete and sole discretion" over the terms of all sublicenses to end user customers, including those sublicenses granted by the TPDs, see Agreements, Section III-C; Complaint ¶¶ 14-15. The Agreements further define the TPDs to include "any affiliate, partner, distributor, or marketing entity with which [RGB] enters into [] marketing and sub-license agreements . . .". Agreements, Section I-M (emphasis added). These allegations, taken together, support the plausible inference that RGB and the TPDs entered into principal-agent relationships whereby the TPDs functioned as RGB's agents for the limited purpose of sub-licensing Grecco's copyrighted images to end users.

Additionally, RGB asserts that, pursuant to Section III-D of the Agreements, it was not responsible for what the TPDs did with Grecco's copyrighted images. See Motion at 5 (citing Agreements, Section III-D). According to Grecco, this liability disclaimer provision, when viewed in the context of the Agreements as a whole, did not apply to the actions of RGB's agents, the TPDs. Instead, it applied to the conduct of "end users," the parties to

---

[5]    "Although an unpublished opinion is not binding . . ., it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

whom RGB and the TPDs intended to sell licenses.[6]  See Response at 10.  Indeed, the plain language of this provision appears to protect RGB from responsibility for the compliance of end users with the terms of any end user license agreements.  See Agreements, Section III-D.  It does not, however, appear to absolve RGB of responsibility for the actions of the TPDs with respect to complying with the terms of the Agreements, as RGB suggests.  Notably, the defined term "Third Party Distributor," does not appear anywhere in this provision.  See id.  Regardless of which interpretation is correct, given that all reasonable inferences must be drawn in favor of the plaintiff when ruling on a motion to dismiss, see Omar, 334 F.3d at 1247, the Court declines to accept RGB's suggestion that it cannot be responsible for "what the distributors do" with the copyrighted images.

## B. Grecco's Claims

Having addressed certain threshold issues concerning the interpretation of the Agreements, the Court will now turn to an analysis of the sufficiency of each of Grecco's claims.  "The Copyright Act of 1976 (Copyright Act), 17 U.S.C. §§ 101 et seq., is the congressional implementation of an affirmative constitutional duty under the copyright and patent clause '[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries.'"  Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 842 (11th Cir. 1990) (quoting U.S. Const. art I, § 8, cl. 8) (additional citations omitted).  Pursuant to Section 106 of the Copyright Act, the owner of a copyright has the exclusive rights to reproduce the copyrighted work, prepare derivative works, or distribute copies of the

---

[6]     Grecco notes that the TPDs did not pay for licenses to use its photos.  Instead, RGB hired the TPDs to sell licenses to end users, and these sales were intended to generate royalties for Grecco.  See Response at 11.

-10-

copyrighted work to the public, among other things.  <u>See</u> 17 U.S.C. § 106(1)-(3).  "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author[.]"  17 U.S.C. § 501(a).  Copyright infringement can be either direct or indirect, with claims of indirect infringement being further divided into two categories: contributory infringement and vicarious infringement.  <u>BUC Int'l Corp. v. Int'l Yacht Council Ltd.</u>, 489 F.3d 1129, 1138 n. 19 (11th Cir. 2007).  Notably, the Eleventh Circuit recognizes that there are no clear distinctions between these various theories of liability.  <u>See</u> <u>Casella v. Morris</u>, 820 F.2d 362, 365 (11th Cir. 1987) (quoting <u>Sony Corp. v. Universal City Studios, Inc.</u>, 464 U.S. 417, 435 (1984) ("[T]he lines between direct infringement, contributory infringement and vicarious liability are not clearly drawn.")).

### 1.  Count I: Direct Copyright Infringement

In Count I of the Complaint, Grecco asserts that the Infringed Images are "original works of authorship, embodying copyrightable subject matter" and that it owns all "rights, title and interest" to the copyrights in the Infringed Images.  <u>See</u> Complaint ¶ 43.  Grecco also alleges that: (1) during the term of the Agreements, RGB distributed the Infringed Images to and through ImageSelect, an unauthorized distributor; and (2) after the expiration of the Survival Term, RGB continued to "use[] and exploit[]" the copyrighted images.  <u>See</u> <u>id.</u> ¶¶ 31, 47.  With respect to its alleged distribution through ImageSelect, RGB contends that Section III-A of the Agreements granted RGB "the right to sub-distribute [Grecco's copyrighted images] to the [TPDs], and [the TPDs] can grant sublicenses to their clients."  <u>See</u> Motion at 5 (citing Agreements, Section III-A).[7]  In other words, RGB appears

---

[7]    Although RBG advances this contention as part of its preliminary arguments regarding the interpretation of the Agreements, <u>see</u> Motion at 5, because it appears to primarily raise an issue of fact with respect to Grecco's claim for direct infringement, the Court will address it here.

to argue that ImageSelect received the copyrighted images lawfully via one of the TPDs. Alternatively, RGB contends that the use of a distributor not listed in the Agreement is simply a contractual issue. Id. RGB also contends that the allegations of direct infringement are based solely on the actions of Science Faction, and as such do not state a claim of direct infringement by RGB. See id. at 6. In the Response, Grecco counters that its factual allegations support the claim that "[RGB], its wholly-owned subsidiary, and its other agents (i) exceeded the scope of the permitted license extended in the Agreements and (ii) copied constituent elements of the works that are original . . .". Response at 6-7.

To state a claim for direct copyright infringement, a plaintiff must show that: (1) it owns a valid copyright in the infringed work or works; and (2) the defendant copied protected elements from the work or works. See Smith v. Casey, 741 F.3d 1236, 1241 (11th Cir. 2014) (citing Saregama India Ltd. v. Mosley, 635 F.3d 1284, 1290 (11th Cir. 2011)); see also Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1232-33 (11th Cir. 2010) (citation omitted) (articulating the same elements). Additionally, "a copyright owner may bring a claim for infringement against a licensee whose actions exceed the scope of the license." Tingley Sys., Inc. v. HealthLink, Inc., 509 F. Supp. 2d 1209, 1217 (M.D. Fla. 2007) (citation omitted). The Eleventh Circuit implicitly recognized this proposition in MCA Television Ltd. v. Pub. Interest Corp., 171 F.3d 1265, 1275 (11th Cir. 1999), where the court noted that, even if parties execute a legally enforceable contract governing the use of copyrighted content, "copyright protections remain in the background to ensure that licensees do not use materials in ways that exceed the scope of their licenses." Recognizing this authority, the court, in CBS, Inc. v. PrimeTime 24 Joint Venture, 76 F.

Supp. 2d 1333, 1337 (S.D. Fla. 1998), denied a motion seeking dismissal of a copyright infringement claim on the grounds that it was a contractual claim because the claim was based on an allegation that the defendant exceeded the scope of its license. Citing to <u>MCA Television</u>, the court rejected that argument, noting that "it is well settled that federal copyright law jurisdiction exists where a copyright owner claims that a licensee exceeded the scope of its license." <u>Id.</u>

Here, Grecco alleges that ImageSelect was not included on the list of authorized TPDs attached to the Non-Exclusive Contributor Agreement, <u>see</u> Complaint ¶ 30, but that "[RGB] nevertheless distributed [Grecco's copyrighted images] to and through ImageSelect during the term of the [Agreements] and/or during the Survival Term[,]" <u>id.</u> ¶ 31. Simply put, Grecco alleges that RGB impermissibly exceeded the scope of its license by distributing Grecco's copyrighted images directly to ImageSelect, an unauthorized distributor. This is sufficient to state a claim for direct infringement, and RGB does not expressly argue otherwise. <u>See</u> <u>generally</u> Motion.

RGB also argues that it cannot be liable for direct infringement based on the activities of its agents and a subsidiary operating under its control.[8] In the Response, without citing any authority, Grecco asserts that RGB is directly responsible for the actions of its subsidiary, Science Faction, and those of the TPDs. <u>See</u> Response at 6-9 (noting that the Complaint pleads direct infringement by RGB, its subsidiary, and the TPDs). When faced with a similar argument, where defendants contended that plaintiffs' allegations of direct infringement were actually based on the actions of third parties, the court in <u>BWP</u>

---

[8]    In the Complaint, Grecco alleges that "[RGB], the owner of wholly-owned subsidiary Science Faction, is directly responsible for [Science Faction's] infringing actions[,]" Complaint ¶ 45, and that "[RGB], the disclosed principal of the identified agents, the [TPDs], and its unauthorized agent ImageSelect, is directly responsible for their infringing actions[,]" <u>id.</u> ¶ 46.

-13-

<u>Media USA Inc. v. Hollywood Fan Sites, LLC</u>, 69 F. Supp. 3d 342 (S.D.N.Y. 2014), noted

that liability for direct infringement "requires volitional conduct that causes the

infringement." <u>Id.</u> at 354 (quotation and citations omitted). The court further explained:

> [T]he Supreme Court has strongly signaled its intent to use the doctrine of contributory infringement, not direct infringement, to 'identify[ ] the circumstances in which it is just to hold one individual accountable for the actions of another.' [<u>Cartoon Network LP, LLLP v. CSC Holdings, Inc.</u>, 536 F.3d 121, 133 (2d Cir. 2008) (quoting [<u>Sony Corp. of Am. v. Universal City Studios, Inc.</u>, 464 U.S. 417, 435 (1984))]. Plaintiff's complaint does not explain how Defendants' "contribution to the creation of an infringing copy may be so great that it warrants holding that party directly liable for the infringement, even though another party has actually made the copy," <u>id.</u>, in a way that preserves the meaningful distinction between direct and contributory copyright infringement.

<u>Id.</u> at 355 (first and second alterations in original). In other words, it is improper to allege

direct infringement by the action of a party other than the named defendant that copied the

work in question. <u>See id.</u> Indeed, Grecco cites no authority in support of its proposition,

and the Court found none. As such, to the extent Grecco alleges that RGB committed

direct infringement on the basis of the infringing acts of its third party agents and subsidiary,

such allegations do not support a claim for direct infringement.[9] However, to the extent

Grecco asserts that third parties received Grecco's copyrighted images from RGB after the

expiration of the Survival Term or otherwise in violation of the Agreements, then Grecco's

allegations would properly support its claim for direct infringement.

Regardless, Grecco states a claim for direct copyright infringement through its

allegations that RGB exceeded the scope of its license by distributing copyrighted images

to an unauthorized distributor, as well as by reproducing, distributing, and publicly

---

[9]     Grecco does not appear to base its claim of liability on a failure to observe corporate formalities such that the Court should pierce the subsidiary's corporate veil. <u>See</u> <u>generally</u> <u>Molinos Valle Del Cibao, C. por A. v. Lama</u>, 633 F.3d 1330, 1349-50 (11th Cir. 2011).

displaying the copyrighted images after the expiration of the Survival Term. See Complaint ¶¶ 31, 47. As such, the Court concludes that RGB's Motion is due to be denied with respect to Grecco's claim for direct copyright infringement in Count I.

### 2. Count II: Contributory Copyright Infringement

In Count II of the Complaint, Grecco brings a claim of contributory copyright infringement. See Complaint at 12. In support of that claim, Grecco alleges that RGB distributed Grecco's copyrighted images to its agents, the TPDs and ImageSelect, and after the expiration of the Survival Term "failed to take actions necessary to terminate [the reproduction, distribution, and public display of the copyrighted images] by its agents." See Complaint ¶ 54. Grecco further alleges that, as a consequence, these agents committed direct infringement of Grecco's copyrights. See id. ¶ 55. Lastly, Grecco avers that RGB had "knowledge and/or reason to know" that the actions of its agents constituted direct infringement. Id. ¶ 57.[10] In the Motion, RGB contends that Grecco fails to assert facts supporting a plausible claim that RGB intentionally induced, encouraged, or materially contributed to the infringing actions of others.[11] Motion at 7-8. RGB also argues that its failure to take action is not a "clear expression or other affirmative step" to induce or encourage infringement as required under the Supreme Court's decision in Metro-

---

[10] Grecco also alleges that RGB "has induced, caused, or materially contributed to the infringing conduct of the [TPDs] and ImageSelect in violation of [Grecco's] exclusive rights under the Copyright Act[.]" Id. ¶ 56. However, RGB correctly asserts that this allegation is a legal conclusion that the Court need not accept as true for the purposes of addressing this Motion. See, e.g., GlobalOptions Servs., Inc. v. N. Am. Training Grp., Inc., 131 F. Supp. 3d 1291, 1300 (M.D. Fla. 2015) (noting that a counterclaim plaintiff's allegation that a counterclaim defendant "has infringed [counterclaim plaintiff's] copyrights by inducing [counterclaim defendant's] users and clients to reproduce, distribute, or otherwise disseminate [counterclaim plaintiff's] copyrighted works" is a bare legal conclusion that does not provide enough factual support to state a plausible claim for contributory infringement). As such, the Court disregards this allegation in determining the sufficiency of Count II.

[11] To the extent RGB intends to suggest that Grecco fails to include an allegation of control over the direct infringers, the argument would be unavailing. Unlike vicarious infringement, a claim of contributory infringement does not require an allegation of control. See, e.g., Casella, 820 F.2d at 365 n. 4.

Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005).  Id. at 8.  In response,

Grecco contends that a "knowing failure to prevent the infringement may comprise the

intentional step required under the Grokster standard."  Response at 13 (citing Perfect 10,

Inc. v. Amazon.com, Inc., 487 F.3d 701, 727 (9th Cir. 2007), amended and superseded by

Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146 (9th Cir. 2007)).

In Grokster, the Supreme Court explained that "[o]ne infringes contributorily by

intentionally inducing or encouraging direct infringement[.]"  Grokster, 545 U.S. at 930.

Contributory infringement, thus, "necessarily must follow a finding of direct or primary

infringement."  Cable/Home Commc'n Corp., 902 F.2d at 845.  The Eleventh Circuit has

stated that a contributory infringer is "'one who, with knowledge of the infringing activity,

induces, causes or materially contributes to the infringing conduct of another.'"  Id.

(citations omitted).  The court has also explained "that '[t]he standard of knowledge is

objective: Know, or have reason to know.'"  Id. (alteration in original).  Thus, to establish a

prima facie claim of contributory infringement, Grecco must allege: (1) a direct

infringement, (2) that RGB had knowledge of the direct infringement, and (3) that RGB

intentionally induced, encouraged, or materially contributed to the direct infringement.  See

Lifetime Homes, Inc. v. Residential Dev. Corp., 510 F. Supp. 2d 794, 808 (M.D. Fla. 2007).

The third element of this claim was the focus of the Supreme Court's decision in Grokster.

See Grokster, 545 U.S. at 935-37.  There, the Supreme Court considered claims against

companies that "distribute[d] free software products that allow[ed] computer users to share

electronic files through peer-to-peer networks" where the users predominantly utilized the

networks to share "copyrighted music and video files without authorization."  Id. at 919-20.

As a result of this infringing use, a group of movie studios and other copyright holders sued

the companies for their users' infringements, "alleging that [the companies] knowingly and intentionally distributed their software to enable users to reproduce and distribute the copyrighted works in violation of the Copyright Act." Id. at 920-21. Upon review, the Court held that "[o]ne who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties" using the device, regardless of the device's lawful uses. Id. at 936-37.

RGB argues that its failure to act is not a clear expression or other affirmative step as required by Grokster. See Grokster, 545 U.S. at 936-37. A review of the court's decision in Disney Enters., Inc. v. Hotfile Corp., No. 11-20427-CIV, 2013 WL 6336286 (S.D. Fla. Sept. 20, 2013), is instructive as to this issue. In Disney, the court compared inducement liability, which generally requires Grokster-type intent, i.e. "evidence of active steps taken to entice or persuade another to infringe[,]" with liability for materially contributing to the infringing activities, which does not require the same level of intent provided that a defendant's contribution to infringing activities is in fact "material." See id. at *32 (citing Grokster, 545 U.S. at 935-37), *33 (citing Arista Records LLC v. Lime Grp. LLC, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011)). The court also considered the Ninth's Circuit's analysis in Perfect 10, where the court held that a defendant "may face liability where it knows of particular instances of infringement . . . and fails to act to remove it." Id. at *34 (citing Perfect 10, 508 F.3d at 1155-56). According to the Disney court, the Ninth Circuit was "persuaded by the reasoning that secondary infringement should be available to provide a practical mechanism for preventing direct infringement" which led it to conclude that "an actor may be contributorily liable for intentionally encouraging direct infringement

if the actor takes steps that are substantially certain to result in direct infringement." Id. (citing Perfect 10, 508 F.3d at 1170-71, n. 11). Based on this proposition, the Ninth Circuit concluded that the defendant in Perfect 10 may have been contributorily liable for copyright infringement where it substantially assisted with the distribution of copyrighted images and assisted an audience of users with accessing the infringing materials. Id. (citing Perfect 10, 508 F.3d at 1172). Following the Ninth Circuit's reasoning, the Disney court noted that "where the defendant knows of specific infringing content available on its system yet fails to remove it – that defendant may be liable, by operation of law, just as if he had actually intended to infringe under Grokster" and that "contributory infringement may be found based on a material contribution theory in instances where a defendant did not express an intention to foster infringement but provided the means for infringement . . .". Id. at *35.

Applying the foregoing reasoning to the present action, it appears that Grecco has stated a plausible claim for contributory infringement even without alleging a "clear expression or other affirmative step[,]" as addressed in Grokster.[12] Here, Grecco alleges that RGB knowingly continued to provide the TPDs access to the copyrighted images after the expiration of the Survival Term and failed to act to remove the images or otherwise restrict access to them when it no longer had "license, permission, or other authorization" to distribute the images, and that RGB's actions consequently permitted the TPDs to engage in direct infringement. See Complaint ¶¶ 54-55, 57. In other words, RGB provided

---

[12] Indeed, the facts of the present case are materially different from those in Grokster. There, the Supreme Court held that a party could be contributorily liable for copyright infringement if that party distributes a product that is capable of substantial or commercially significant non-infringing uses, but nevertheless actively encourages infringement through specific acts. See Grokster, 545 U.S. at 935-36. Here, the alleged infringement does not arise from the distribution of a device which allows for the recording of copyrighted works, but rather from the unlicensed copying and distribution of copyrighted images. Hence, there is no "substantial non-infringing use" for the images in question that would require additional evidence of "clear expressions or other affirmative steps" encouraging infringement as discussed in Grokster.

the means for the TPDs to infringe Grecco's copyrights, actually assisted in the distribution of the images pursuant to its marketing and sub-license agreements with the TPDs, and failed to act to prevent further infringement when it was in a position to do so. These allegations, taken together, are sufficient to state a plausible claim for contributory infringement based on a material contribution theory. See generally Casella, 820 F.2d at 365-66 (affirming the defendant's liability for contributory infringement where he was on notice of the termination of his licensing rights but "did nothing to stop the transfer of [copyrighted content], limit its effect, inform [] other parties of the recission, or communicate in any way the termination of the [licensing] rights"); Tavory v. Barber, No. 09-CV-80934-RYSKAMP/VITUNAC, 2010 WL 11505172, at *6 (S.D. Fla. Aug. 23, 2010) (noting that the plaintiff stated a claim for contributory infringement where he alleged that the defendant assisted third parties in taking unauthorized licenses in infringing works). Thus, the Court determines that RGB's Motion is due to be denied with respect to Grecco's claim for contributory infringement in Count II of the Complaint.

### 3. Count III: Vicarious Copyright Infringement

In Count III of the Complaint, Grecco alleges a claim for vicarious copyright infringement. Specifically, Grecco asserts that RGB "controlled or supervised, or had the right to control or supervise, the activities" of Science Faction, its subsidiary, as well as the TPDs and Image Select, its agents, with respect to the use of Grecco's copyrighted images. Complaint ¶ 64. Grecco further alleges that RGB "demonstrated an intention to profit" from the infringing actions of its agents and subsidiary when, after the expiration of the Survival Term, these third parties continued to unlawfully reproduce, distribute, and display Grecco's copyrighted images. See id. ¶¶ 32-35, 66. In the Motion, RGB asserts that

Grecco fails to allege that RGB profited directly from the infringement, because Grecco merely alleges that RGB "demonstrated <u>an intention</u> to profit" from the infringement.  <u>See</u> Motion at 8 (emphasis added).[13]  In response, Grecco notes that it alleges both that RGB intended to profit from the exploitation of the copyrighted works, and that RGB engaged in actual exploitation through its agents and subsidiary.  Grecco further notes that Section I-M of the Agreements permitted RGB to enter into "marketing and sub-license agreements" with its distributors, giving RGB a direct financial interest in the exploitation.  <u>See</u> Response at 15 (citing Agreements, Section I-M).

"Vicarious infringement occurs 'when the defendant profits directly from the infringement and has the right and ability to supervise the direct infringer.'"  <u>Klein & Heuchan, Inc. v. Costar Realty Info., Inc.</u>, 707 F. Supp. 2d 1287, 1289 (M.D. Fla. 2010), aff'd, 425 Fed. Appx. 833 (11th Cir. 2011) (per curiam) (quoting <u>Grokster</u>, 545 U.S. at 930).  This is true even if the defendant lacks knowledge of the infringement.  <u>See</u> <u>Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.</u>, 998 F. Supp. 2d 1340, 1356 (S.D. Fla. 2014) (citing <u>BUC Int'l Corp.</u>, 489 F.3d at 1138 n. 19).  In alleging that a defendant profited directly from the infringement, it is also sometimes sufficient to allege that the defendant had a "direct financial benefit" in the infringement.  <u>See</u> <u>Klein</u>, 707 F. Supp. 2d at 1297-99.  Allegations of a "direct financial benefit" are sufficient when "there is a causal connection between the infringing activity and any financial benefit a defendant reaps . . .".  <u>Id.</u> at 1299 (quoting <u>Ellison v. Robertson</u>, 357 F.3d 1072, 1079 (9th Cir. 2004)).

---

[13]     Additionally, RGB argues that this claim fails as a result of Section III-D of the Agreements, in which the parties purportedly recognized that RGB "cannot be responsible for the [l]icensees."  <u>See</u> Motion at 8; Agreements, Section III-D.  However, the Court has previously concluded that Grecco's interpretation of Section III-D is plausible, and thus will not consider that contention further at this stage of the proceedings.

In <u>Marketran, LLC v. Brooklyn Water Enters., Inc.</u>, No. 9:16-CV-81019-WPD, 2016 WL 8678550, at *1 (S.D. Fla. Nov. 8, 2016), the court examined the sufficiency of a plaintiff's allegations of "direct financial benefit." There, the plaintiff, a marketing, advertising, and graphic design company, was hired by the defendants to create marketing materials to promote defendants' restaurant franchise. <u>See</u> <u>id.</u> Over time, the relationship between the parties deteriorated, and ultimately the defendants ended their use of the plaintiff's services, meaning the defendants "no longer had any license to continue to use [the plaintiff's] copyrighted works." <u>See</u> <u>id.</u> Despite that, the defendants continued to use the plaintiff's copyrighted materials in their advertising, leading plaintiff to sue for vicarious infringement. <u>See</u> <u>id.</u> at *2. In doing so, the plaintiff alleged that one of the defendants, the managing member of the restaurant franchises, "derive[d] a financial benefit from allowing the infringement to continue." <u>Id.</u> In denying a motion to dismiss, the court determined that this allegation was sufficient to state a claim where the infringing use of the copyrighted materials "work[ed] to increase sales of [defendants'] franchises." <u>See</u> <u>id.</u> at *3; <u>see</u> <u>also</u> <u>Playboy Enters., Inc. v. Starware Publ'g Corp.</u>, 900 F. Supp. 438, 441 (S.D. Fla. 1995) (noting that a defendant had a direct financial interest in infringing activities where he "benefitted financially" from the sale of copyrighted CD-ROM disks).

Here, Grecco makes a number of allegations in the Complaint that, when taken together, support a conclusion that RGB had a direct financial interest in the continued exploitation of Grecco's copyrighted images. First, Grecco asserts that, after the expiration of the Survival Term, it discovered that RGB's agents, including both the TPDs and ImageSelect, were reproducing, distributing, publicly displaying, and holding out for license Grecco's copyrighted images. <u>See</u> Complaint ¶¶ 32-34. According to the Agreements

attached as exhibits to the Complaint, each of these agents entered into "marketing and sub-license agreements" with RGB, see Agreements, Section I-M, whereby the agents would sell licenses in the copyrighted images to end users, resulting in profits for the agents, RGB, and ultimately Grecco. Additionally, with respect to Science Faction, Grecco states that this "wholly-owned subsidiary" of RGB, which was previously identified as one of the TPDs in the Agreements, was engaging in the same infringing activities as the agents.[14] See Complaint ¶ 35. At this stage of the proceedings, Grecco's allegations are sufficient to demonstrate a "causal connection between the infringing activity and any financial benefit" acquired by RGB. See Klein, 707 F. Supp. 2d at 1299 (citation omitted). Like the defendant in Marketran, 2016 WL 8678550, at *2-*3, Grecco alleges that RGB derived a direct financial benefit from allowing the infringing activities of its agents and subsidiary to continue after the Agreements and subsequent Survival Term expired. This, together with Grecco's allegation of RGB's demonstrated intent to profit from the infringement, see Complaint ¶ 66, is sufficient to allege a direct financial interest in the alleged copyright infringement. As such, the Court concludes that RGB's Motion is due to be denied with respect to Grecco's claim for vicarious infringement in Count III of the Complaint.

---

[14] It is worth noting that, in at least one case out of this District, the court stated that to allege vicarious liability based on the infringing acts of a subsidiary, "[t]he right and ability to supervise must go beyond the parent-subsidiary relationship and is usually marked by day-to-day control." Pegasus Imaging Corp. v. Northrop Grumman Corp., No. 8:07-CV-1937-T-27EAJ, 2008 WL 5099691, at *2 (M.D. Fla. Nov. 25, 2008) (citation omitted). There, the court dismissed a claim for vicarious infringement where the plaintiff failed to include "sufficient factual allegations of [the defendant's] direct participation in the decisions, processes, or personnel directly responsible for the infringing activity." Id. (citation omitted). Here, Grecco has not alleged that RGB had day-to-day control over Science Faction; however, RGB does not raise this issue or otherwise separately address the element of control with respect to this claim in its Motion. As such, the Court will not consider it at this time.

### 4. Count IV: Violation of the DMCA

In Count IV of the Complaint, Grecco alleges that after the expiration of the Survival Term, RGB directly, "including by and through its subsidiary Science Faction, and by and through its agents, the [TPDs] and ImageSelect," provided and distributed false copyright management information by incorrectly identifying RGB, and not Grecco, as "having a copyright interest" in the copyrighted images. <u>See</u> Complaint ¶¶ 32, 37, 72. Grecco further alleges that RGB provided the false copyright management information willfully and deliberately to conceal the infringement of Grecco's exclusive copyrights. <u>Id.</u> ¶ 73. In the Motion, RGB argues that this claim fails because copyright credit was negotiated by the parties in the Agreements. <u>See</u> Motion at 9. In particular, Section II-G of the Agreements states that RGB may include its name or the name of an authorized TPD as the source of the copyrighted images. <u>See</u> <u>id.</u> (citing Agreements, Section II-G). As such, RGB argues that, because Grecco accepted the terms of the Agreements and understood that the copyright management information could credit the images to RGB or its TPDs, Grecco's claim for violation of the DMCA must fail. <u>See</u> <u>id.</u> In response, Grecco asserts that this claim arises from RGB's distribution and display of the copyrighted images <u>after</u> termination of the Agreements, at which point RGB no longer had contractual permission to attribute Grecco's copyrights to itself. <u>See</u> Response at 16.

The DMCA, 17 U.S.C. § 1202, states in pertinent part that "[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement, provide copyright management information that is false." 17 U.S.C. § 1202(a)(1). Copyright management information includes "information conveyed in connection with copies" of a work such as "information set forth on a notice of copyright" and "the name of . . . the author

of the work." See Roof & Rack Prods., Inc. v. GYB Investors, LLC, No. 13-80575-CV, 2014 WL 3183278, at *5 (S.D. Fla. July 8, 2014) (citing 17 U.S.C. § 1202(c)(1)-(2)).  Here, Grecco states a valid claim for violation of the DMCA inasmuch as it alleges that RGB displayed the copyrighted images with copyright management information incorrectly identifying RGB, not Grecco, as the copyright holder with the intent[15] to facilitate or conceal infringement.  See Complaint ¶¶ 72-74.

To the extent RGB contends that this claim is insufficient because Grecco fails to specify whether the misidentifications occurred during the term of the Agreements or the Survival Term, this argument is unavailing.  Section V-D of the Agreements expressly provides that Section II, in its entirety, does not survive the termination or expiration of the Agreements.  See supra at 3.  Moreover, a review of Exhibit D to the Complaint, which includes internet screenshots of unauthorized reproductions and public displays of the copyrighted images, demonstrates that these images and their false copyright management information were available online as recently as August and September of 2016, well beyond the expiration of the Survival Term.  See Complaint, Exhibit D: Infringing Works Examples (Doc. No. 7-5).   As such, RGB's argument for dismissal of this claim lacks merit, and the Court determines that its Motion is due to be denied with respect to Grecco's claim for violation of the DMCA in Count IV of the Complaint.

### 5.  Count V: Breach of Contract

In Count V of the Complaint, Grecco alleges that RGB materially breached the Agreements by (1) failing to pay Grecco royalties and other fees due and (2) distributing reproductions of the copyrighted images to "one or more third parties who [were] not []

---

[15]    In accordance with Rule 9(b), intent may be alleged generally.  See Rule 9(b).

authorized [TPDs]." Complaint ¶¶ 81-82. Grecco further alleges that, due to the breach, it has sustained and will continue to suffer damages. Id. ¶ 83. In the Motion, although RGB states that it seeks dismissal of all of Grecco's claims, see Motion at 2, it does not separately argue for dismissal of the breach of contract claim, see generally id. To the contrary, RGB asserts that Grecco's "issue with [RGB] is, at best, a breach of contract claim." Id.; see also id. at 4 ("Payment of royalties is a contract issue, not copyright.").

Under Florida law, to state a claim for breach of contract, a plaintiff must allege: (1) a valid contract, (2) a material breach, and (3) damages. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999) (per curiam). Here, RGB does not contest the validity of the Agreements, see generally Motion, and Grecco's Complaint alleges both that RGB breached the Agreements and that the breach resulted in "substantial" damages, see Complaint ¶¶ 81-83. Accordingly, to the extent the Motion seeks dismissal of Grecco's claim in Count V of the Complaint for breach of contract, the Court concludes that it is due to be denied.

## IV.    Conclusion

In light of the foregoing, RGB's Motion is due to be denied in its entirety. Accordingly, it is hereby **ORDERED:**

Defendant RGB Ventures, LLC's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 13), including the alternative request for a more definite statement, is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida, on September 14, 2017.

MARCIA MORALES HOWARD
United States District Judge

lc24

Copies To:

Counsel of Record